IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| JASON RAZIEN | § § § | |
| v. | § § | CASE NO.: 1-16-cv-1209 |
| MICROFOCUS INTERNATIONAL PLC., HEWLETT PACKARD ENTERPRISE COMPANY, and Et. Al. | § § § | |

**COMPLAINT AND JURY DEMAND**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

NOW COMES Plaintiff Jason Razien, by and through his attorney, Rambhotla Law Firm PLLC and for his Complaint against Defendants Microfocus International Plc ("Microfocus") and Hewlett-Packard Enterprise ("HPE") (collectively "Defendants"), hereby states as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. § 794 (the "Rehabilitation Act"), the Texas Labor Code, Title II § 21(a) (the "Labor Code"), as well as Texas statutory and common law.

2. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

   b. 28 U.S.C. § 1332, federal diversity jurisdiction, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

   c. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e to 2000e-17.

   d. Americans with Disabilities Act of 1990, as codified, 42 U.S.C, . § 12112 to 12117.

   e. Supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

   f. 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

   g. 28 U.S.C. § 1367, which gives the district court supplemental jurisdiction over state law claims.

3. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because the events

that gave rise to this Complaint occurred in this district.

## PARTIES

4. Plaintiff is a citizen of the United States and resides in the County of Travis, State of Texas, which is in this judicial district.

5. Defendant Micro Focus International plc is a public entity for the purposes of the ADA pursuant to 42 U.S.C. § 12131(1), and is a limited company registered in England and Wales at The Lawn, 22-30 Old Bath Road, Berkshire, RG14 1QN; and can be served process upon its agent, NATIONAL REGISTERED AGENTS, INC., 1999 Bryan St., Ste. 900, Dallas TX, 75201.  Defendant provides programs and/or activities receiving federal financial assistance acting under the color of state and federal law.

6. Defendant Hewlett Packard Enterprise Company is a public entity for the purposes of the ADA pursuant to 42 U.S.C. § 12131(1), and is located in the County of Santa Clara, State of California; and can be served process upon its agent, C T CORPORATION SYSTEM, 1999 Bryan St., Ste. 900, Dallas TX, 75201. Defendant provides programs and/or activities receiving federal financial assistance acting under the color of state and federal law.

## GENERAL ALLEGATIONS

7. Defendants are "employers" under the ADA. *See* 42 U.S.C. § 12111(5).

8. Title I of the ADA, found at 42 U.S.C. §§ 12111-12117, prohibits discrimination by employers against qualified individuals on the basis of disability. Furthermore, the ADA

prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." *Id.* at §12112(b)(4).

9. Title V of the Rehabilitation Act, found at 29 U.S.C. § 794, extends the non-discrimination provisions of the Rehabilitation Act to an entire corporation to whom federal financial assistance has been extended or under any program or activity conducted by any Executive Agency. It requires that no otherwise qualified disabled individual shall be discriminated against based on their disability.

10. Here, the Rehabilitation Act extends to the Defendant, HPE, because HPE receives federal financial assistance in the form of federal debt securities and also receives money from programs and activities conducted by Executive Agencies through contracts with those agencies.

11. Plaintiff is a 41-year-old Man with the following needs for long term medical care: Adult ADHD, Anxiety Disorder/Panic Attacks, Bi-Polar, Manic Depression, Obssessive Compulsive Disorder, Sleep Disorders, and Schizophrenia.

12. As a result of Plaintiff's conditions, Plaintiff is effected in the following areas: Speech, Ability to stand or sit in one place for any amount of time, Tremors, Appetite, Anxiety Attacks, Sleeps Patterns, Difficulty in Carrying on Simple Tasks, Short-Term Memory Loss, Moodiness, Extreme Dry Mouth, Difficulty Working on a Single Ta, Standing on Stage when Symptomatic, Double Vision, Burning Sensation in Eyes, Inability to Drive, Inability to Shave and Dress, and Weight Gain and Loss.

13. Plaintiff's spouse, Emily Kate Samuel, is a thirty-two year old woman with medical

disabilities that requires constant medical treatment and is considered permanently disabled by the Social Security Administration.

14. Plaintiff has had a long relationship with Microfocus and its predecessors, Attachmate group, which evolved into a publicly traded company after merging with NetIQ following its purchase of Novell and SuSe, His initial tenure with Microfocus was from June 2000 to May 2010 where he rose through the ranks to Senior Sales Executive.

15. Plaintiff's employment separation was voluntary due to market conditions, and was given a counteroffer from Microfocus that was rejected by Plaintiff because of more competitive offers elsewhere.

16. Attachmate was so impressed with Plaintiff's services that he was offered the position of Senior Manager entitling him to a full "tenure" for his previous decade of service to the company, along with benefits and payscale as it existed when the company was originally known as Novell. This benefits package included comprehensive medical care which would cover Plaintiff as well as his immediate family.

17. Plaintiff provided Microfocus with his wife's medical condition and relevant information during the benefits enrollment process with Microfocus at the time of his re-hiring.

18. Soon after Plaintiff started the 2015 tenure, Attachmate group was acquired by Microfocus who immediately began a series of layoffs and cost cutting measures that resulted in the "Reduction in Force: ("RIF") of approximately 500 individuals being discharged from employment. These layoffs were in part to make their newest purchase attractive enough to be sold to HPE.

19. The employees that were discharged were provided appropriate compensation packages

by officially being part of the RIF. They were similarly situated to Plaintiff with the exception of his disabled spouse and her lofty medical bills.

20. When the layoffs were not enough to incentivize HPE to purchase the company, Microfocus intentionally and knowingly began selectively terminating employees who were costing the most to employ, particularly those who were in a protected class due to disability.

21. HPE consented to the actions by Microfocus either expressly, implicitly or by acquiescence, and was in direct collaboration in conjunction with Microfocus regarding the merger or acquisition of Microfocus and related terminations and layoffs by Microfocus.

22. Plaintiff was a party to a conference call whereby he was informed that 500 employees would be laid off, and that everyone on that call was to consider themselves as being safe from termination of employment.

23. After the series of layoffs, Microfocus started receiving the medical bills for Plaintiff's wife who was averaging around $16,000- $18,000 a month in health care expenditures. Because of Plaintiff's "tenured" benefit plan, these costs were covered at least in part by Microfocus themselves, an amount of money representing approximately two times Plaintiff's base monthly salary.

24. In June 2015, Plaintiff was terminated by Microfocus, due to his "performance" wholly as a pretext to its cost cutting measures. There were no performance metrics such as the ones that were in place during the first term of employment where Plaintiff excelled being placed as number one globally in his performance. Plaintiff was also number one

at Quest/Dell where he worked after his first term of employment with Microfocus.

25. There were no concrete metrics to measure Plaintiff's performance, nor were any questions or concerns been raised regarding his performance raised prior to termination. Had Microfocus' reason been true, there would have been some sort of formal measures by human resources, or admonishments which could have given notice to Plaintiff that his performance was inadequate. That is, Microfocus failed to engage in any sort of progressive discipline of Plaintiff for alleged infractions that is typical among such entities, instead deciding to terminate him immediately, ostensibly for performance issues, at a time when Microfocus had significant motivation to cut costs and corners because of its pending acquisition by HPE.

26. Plaintiff's use of health care benefits, because of his wife's disability, represented a substantial cost to Microfocus should they have offered him an RIF severance package. As such, Microfocus had substantial motivation, based upon optimizing its financials pending acquisition by HPE, to terminate Plaintiff in a manner that avoided any severance pay. Plaintiff's wife's disability, and its associated expenses, represented a significant, improper motivation in the wrongful termination of Plaintiff.

27. June 30, 2015 was supposed to be the last day of pay for Plaintiff, and is the day he first realized that his employment termination was going to be processed in accordance with his alleged lack of performance and that he was not going to benefit from the RIF terms provided to his fellow colleagues.

## COUNT I

## VIOLATION OF 42 U.S.C. § 12112

28. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

29. Defendants have discriminated against Plaintiff in their termination of his employment because of the disparate treatment in how he was discharged from employment as compared to other similarly situated individuals in Defendants' employ, in part by denying him a RIF severance package equivalent to that given to many other individuals similarly situated to Plaintiff, minus having a disabled spouse and Plaintiff's own disabilities.

30. As a direct and proximate result of Defendants' violation of 42 U.S.C. § 12112, Plaintiff has sustained injuries and damages.

## COUNT II

## VIOLATION OF THE REHABILITATION ACT

31. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

32. Plaintiff is a "disabled/handicapped" individual as defined in 29 U.S.C. § 705.

33. The Rehabilitation Act and its implementing regulations require that Defendant administers program/activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. 28 C.F.R. §41.51 and 45 C.F.R. §84.4.

34. Plaintiff has been discriminated against on the basis of his disability.

35. As a result of HPE's discrimination, HPE violated the Rehabilitation Act by discriminating against Plaintiff in a number of ways, including without limitation, the following:

    a. Providing services Plaintiff requires not in the "most integrated setting" appropriate to the needs of the Plaintiff;

    b. Denying Plaintiff the equal/same opportunity to receive the benefits of HPE's programs/activities that are available to other qualified individuals with disabilities; and

    c. Denying Plaintiff employment under the standards applied under title I of the Americans with Disabilities Act of 1990.

36. As a direct and proximate result of HPE's unlawful discrimination, Plaintiff has sustained injuries and damages.

## COUNT III

## VIOLATION OF TEX. LAB. CODE § 21.051

37. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

38. Defendants have discriminated against Plaintiff in their termination of his employment in violation of Tex. Lab. Code § 21.051 because of the disparate treatment in how he was discharged from employment as compared to other similarly situated individuals in Defendants' employ, in part by denying him a RIF severance package equivalent to that given to many other individuals similarly situated to Plaintiff, minus having a disabled spouse.

39. Microfocus stated the reason for discharge as being "performance" based wholly as a pretext for the wrongful termination, despite a prior conference call assuring Plaintiff that he was not at risk for layoffs or termination.

40. As a direct and proximate result of Defendants' wrongful discrimination, Plaintiff has

sustained injuries and damages.

## COUNT IV

## BREACH OF CONTRACT

41. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

42. Defendants had a duty to uphold the terms of the employment contract and to not discharge without good cause.

43. Though Plaintiff was hired as an "at will" employee, the offer made to the Plaintiff included additional pay based on meeting quota. However, Plaintiff was given no concrete metrics and was provided no notice of concerns regarding his performance.

44. Microfocus stated the reason for discharge as being "performance" based wholly as a pretext for the wrongful termination.

45. As a direct and proximate result of said Defendants' breach of contract, Plaintiff has sustained injuries and damages.

## COUNT V

## BREACH OF THE IMPLIED COVENANT OF

## GOOD FAITH AND FAIR DEALING

46. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

47. Defendants had an implied covenant of good faith and fair dealing which was breached by the wrongful termination of Plaintiff.

48. Microfocus ensured Plaintiff, through hiring manager Bernie Goicoechea, that Plaintiff was not expected to make quota the first year. Plaintiff was never informed of quota or provided with any metrics for performance. Despite this, Plaintiff was terminated by

Microfocus with a reason given as "performance."

49. As a direct and proximate result of Defendants' violation of the implied covenant of good faith and fair dealing, Plaintiff has sustained injuries and damages.

## COUNT VI

## PROMISSORY FRAUD

50. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

51. Microfocus through its hiring manager Bernie Goicoechea who had made an oral promise that they wanted Plaintiff "to be in it for the long run", and also made a comment "and don't expect to make your quota in the first year", which later turned out to be a slip of the lack of intent in the making of such promise without intending to honor it.

52. Microfocus failed to provide any metrics or quota for Plaintiff to meet and then proceeded to terminate Plaintiff allegedly on the basis of "performance," despite the above promise made by Microfocus.

53. Microfocus committed promissory fraud because a promise to do something contains an implied intention to do that act, and thus by making a false promise, made an implied misrepresentation of fact that is fraudulent.

54. As a direct and proximate result of Defendants' false promise, Plaintiff has sustained injuries and damages.

## COUNT VII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

55. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

56. Defendants had a duty to uphold the terms of the employment contract and to not

discharge without good cause.

57. Plaintiff was hired on by Microfocus with notice given of his and his spouse's disabilities.

58. When medical bills began to be received by Microfocus, Plaintiff was terminated in violation of his rights and without any prior notice regarding any problems with his performance.

59. Microfocus was aware of Plaintiff's disabilities causing panic attacks and anxiety attacks.

60. Despite this knowledge, Microfocus chose to take a course of action, by first including Plaintiff in a call ensuring his continued employment with the company and subsequently terminating Plaintiff, which would result in increased symptoms of his anxiety and panic attacks.

61. As a direct and proximate result of Defendants' wrongful termination, Plaintiff has sustained injuries and damages by being forced to go through a divorce proceeding.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

62. On or about May 26th, 2016, Plaintiff filed a charge with the Equal Employment Opportunity Commission.

63. The Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue Letter, which Plaintiff received on or about August 8th, 2016.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants providing the following relief:

(a) Compensatory damages in whatever amount in excess of $5,000,000, exclusive of costs and interest, that Plaintiff is found to be entitled;

(b) Punitive/exemplary damages against Defendants in whatever amount in excess of $10,000,000, exclusive of costs and interest, that Plaintiff is found to be entitled;

(c) An order placing Plaintiff in the position that he would have been in had there been no violation of his rights;

(d) An order enjoining/restraining Defendants from further acts of discrimination or retaliation;

(e) An award of interest, costs, and reasonable attorney's fees;

(f) Any and all other remedies provided pursuant to the ADA;

(g) Take other appropriate nondiscriminatory measures to overcome the above described discrimination; and

(h) Such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action of all issues so triable.

Dated:   November 6th, 2016

                                             Respectfully submitted,

                                             RAMBHOTLA LAW FIRM, PLLC.

                                             KAUSHIK RAMBHOTLA
                                             ATTORNEY FOR DEFENDANT
                                             TX SBN: 24079175
                                             4000 MEDICAL PARKWAY, SUITE # 207
                                             AUSTIN, TX 78613
                                             TEL 512-888-1899
                                             FAX 512-582-8660