IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JASON RAZIEN | § | |
| | § | |
| v. | § | A-16-CV-1209-LY |
| | § | |
| MICRO FOCUS INT'L PLC, et al. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Micro Focus (US), Inc.'s Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. No. 13); Razien's Response (Dkt. No. 14); and the Reply (Dkt. No. 18); Defendant Hewlett Packard Enterprise Company's Motion to Dismiss (Dkt. No. 16); Plaintiff's Response (Dkt. No. 19); and the Reply (Dkt. No. 21). The District Court referred these Motions to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(d) of Appendix C of the Local Rules.

**I. FACTUAL BACKGROUND**

This is an employment discrimination case brought pursuant to the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Texas Labor Code, and Texas statutory and common law. Jason Razien alleges that he is disabled within the meaning of the pertinent statutes and that his former wife Emily Kate Samuel is also disabled. The following facts are taken from Razien's Second Amended Complaint (Dkt. No. 12). Razien was employed by Micro Focus's predecessor Attachmate from June 2000 to May 2010. He left for another opportunity, but returned to employment at Attachmate in 2015. At this time, Razien alleges he provided Attachment with all relevant medical history regarding his disability and that of his wife. Soon after Razien started at

Attachmate, Micro Focus acquired Attachmate. Micro Focus conducted a reduction in force (RIF) resulting in the layoffs of about 500 employees. Razien alleges Micro Focus conducted the layoffs in an effort to make it more attractive for acquisition by Hewlett Packard Enterprise Company. The employees subject to the RIF by Micro Focus received severance packages. Razien alleges he was party to a conference call discussing the RIF, where he, and others on the call, were assured they would not be terminated. On May 30, 2015, Razien was terminated by Micro Focus for poor work performance. He alleges that, in fact, he was terminated because of his wife's high medical bills, which were covered in part by Micro Focus. Razien alleges that because Hewlett Packard required Micro Focus to cut costs before HP would acquire Micro Focus, HP acted in concert with Micro Focus in the termination.

Razien filed a Charge of Discrimination with the EEOC on July 12, 2016, alleging the last date discrimination occurred was June 30, 2015. Dkt. No. 12-3. In that charge, he asserted that he was terminated by Micro Focus because he served as his disabled wife's caregiver. Razien received his Right to Sue letter, which found his charge was not timely filed, via a mailing on August 8, 2016. He filed this suit on November 6, 2016.

## II. ANALYSIS

**A.  Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). To survive the motion, a nonmovant must plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Under Rule 8(a)(2), plaintiffs are not required to include "detailed factual allegations," but at the same time "more than an unadorned, the-defendant-unlawfully-harmed-me accusation is needed." *Twombly*, 550 U.S. at 555 (citations and internal punctuation omitted). . The court generally is not to look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "Pleadings" for purposes of a Rule 12(b)(6) motion include the complaint, its attachments, and documents that are referred to in the complaint and central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

**B.**     **Timeliness of Claims Against Micro Focus**

In a deferral state such as Texas, an aggrieved party must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful practice occurred. 42 U.S.C. § 2000e-5(e); *see also Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 554-55 (5th Cir. 1987). Razien filed his Charge of Discrimination on July 12, 2016, alleging he was terminated on June 30, 2015. Therefore, since Razien filed his charge 409 days after his termination, his charge was filed outside the applicable limitations period.

Razien asserts that, although he filed outside the applicable deadline, the Court should equitably toll the statute of limitations because Micro Focus intentionally concealed facts from Razien and induced him not to act within the limitations period, by lying when it informed Razien he was being terminated for inadequate job performance. The statute of limitations for filing a charge of employment discrimination may be equitably tolled, but equitable tolling is a narrow exception to be applied sparingly. *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003). It is up to the court to evaluate whether such doctrines should be applied. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The Fifth Circuit has developed its own guidelines for equitable tolling. Under them, equitable tolling is appropriate when the employer's affirmative acts mislead the employee and induce him not to act within the limitations period. *Ramirez v. City of San Antonio*, 312 F.3d 178, 184 (5th Cir. 2003).

Razien's equitable tolling argument is quite contorted. He relies on several communications from the TWC regarding his eligibility for unemployment compensation, ending with a notice dated September 10, 2015, stating he was eligible because he had not been terminated for "misconduct." Dkt. No. 12-4. He asserts that this letter marks the date he learned that the "true reason" he was terminated was not his performance, but was discrimination. He also asserts that the date a party could take an appeal of this decision—September 24, 2015—is the date until which the Court should toll the limitations period, and thus his July 12, 2016 charge, filed 292 days later, was timely.

This argument fails for various reasons. First, Razien conflates the TWC's finding of no misconduct with a rejection of Micro Focus's stated reason for firing him. The standard for "misconduct" that disqualifies a worker from receiving unemployment benefits is defined by statute:

> "Misconduct" means mismanagement of a position of employment by action or inaction, neglect that jeopardizes the life or property of another, intentional

> wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees.

TEX. LABOR CODE § 201.012(a). *See also* TEX. LABOR CODE § 207.044(a). Failing to meet expectations for sales or other performance related issues is not the same as "misconduct." Thus, the notification from the TWC that it had concluded that Razien was not fired for misconduct was not a finding that Micro Focus's stated reason for his firing was false, or pretextual. Put another way, the finding by the TWC was not a finding that it did not believe that Micro Focus had fired Razien for poor work performance. Instead, it was the application of a specific statutory definition to a termination. Razien's claim that it was only when he received this notice that he realized he had been discriminated against is therefore flawed. On an equitable tolling argument, the issue is whether the employer actively misled the employee to cause him not to pursue a claim in a timely manner. Even accepting Razien's approach, the facts do not demonstrate that Micro Focus misled him in the TWC proceedings. Instead, Micro Focus continued to assert to the TWC what it told Razien when he was fired—that he was fired for poor performance. The TWC's conclusion that his (allegedly) poor performance did not amount to "misconduct" said nothing about Micro Focus's veracity regarding its reasons for firing Razien.

The chronology of the letters from the TWC further weakens Razien's claim. The first letter, dated July 9, 2015, stated that he was not entitled to benefits because

> your employer fired you because you did not perform your work to the employer's standards although you have previously demonstrated you were capable of doing adequate work. This is considered misconduct connected with the work.

Dkt. No. 12-4 at 1. But four days later, the TWC sent another notice changing its determination, finding him eligible for benefits because it now "found that your employer fired you for a reason that was not misconduct connected with the work. *Id.* at 3. While the TWC sent two subsequent letters

5

regarding his eligibility for benefits, neither of them changed this finding.[1]  Finally, on September 10, 2015, the TWC sent a notice confirming what it had already said in July—that Razien was entitled to benefits because he had not been fired for misconduct. *Id.* at 9.  Importantly, the three letters that addressed this question all share the same "Issue" line at the top of the page: "Separation from Work."  The other two have different "Issue" lines ("Remuneration - Additional Payment" and "Filing - Payment Requests").  In addition, the second letter, dated July 13, 2015, expressly states at the top that it is a "CORRECTED DETERMINATION."  None of the other four notices contain this language.  Focusing on the notices in which TWC was addressing Razien's "Separation from work," the chronology is thus:

| | |
|---|---|
| July 9, 2015 | Ineligible - reason for termination is "misconduct" |
| July 13, 2015 | Eligible - not fired for misconduct ("Corrected Determination") |
| September 10, 2015 | Eligible - not fired for misconduct |

Therefore, even if it is assumed that something about Micro Focus's actions on Razien's claim for unemployment compensation actively misled him and caused him to delay filing an EEOC charge, the fact he claims alerted him to this deception—the finding of no misconduct—was made known to Razien in July 2015, not September 2015, well more than 300 days before he filed his claim.

Third, Razien informed Micro Focus in an email on March 26, 2016, that he was planning to file an EEOC charge on the basis of disability discrimination. Dkt. No. 14-2.[2]  There is therefore

---

[1] On July 13, 2015, the TWC sent a notice that "the additional payment [Razien] received from [Micro Focus] disqualifie[d]" him from benefits until July 4, 2015, and on August 4, 2015, it sent a notice that Razien was not entitled to benefits before July 11, 2015, because he "could have submitted [his] payment request(s) within the time allowed but [he] did not do so." *Id.* at 5, 7.

[2] Razien attached this email to his Response to the Motion to his Dismiss . The email is offered in support of the tolling argument referenced in his Complaint.  Micro Focus objected to the inclusion of the evidence as outside the pleadings, but addressed it in its Response nonetheless.

no doubt that by this date Razien believed he had been discriminated against. Yet he did not file a charge until July 12, 2016—over three months later. To get the benefit of the equitable tolling doctrine, the claimant himself must show he was diligent in pursuing his claim. *Wilson v. Sec'y, Dep't of Veterans Affairs ex. rel. Veterans Canteen Servs.*, 65 F.3d 402, 404 (5th Cir. 1995); *Baldwin Cty. Welcome Ctr.*, 466 U.S. at 151 ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."). Razien cannot meet this standard given this three month delay, and is thus not eligible for equitable tolling.

Finally, even if it is assumed that it was not until the TWC's final letter that Razien was informed of something relevant to his claim here, and even if it is further assumed that he was sufficiently diligent in filing his claim, Razien's charge was not filed within 300 days of his receipt of the final TWC letter. Razien did not file the charge until July 12, 2016. Dkt. No. 12 at ¶ 80. Three hundred days before this filing date is September 16, 2015. Razien received the final TWC communication on September 10, 2015. *Id.* at ¶ 32. Thus, even using this date, he was 6 days late with his charge. Cognizant of the fact that even using the September 10, 2015, receipt date of the TWC's final letter does not save his suit, Razien contends that the Court should look instead to the September 24, 2015 appeal date for that final communication. He wholly fails to explain why that would make sense, or to cite any authority for his argument. As already mentioned, the question on equitable tolling focuses on whether there were actions by the employer that actively misled the employee. There is nothing about the appeal deadline from this final letter that pertains to, or

---

Similarly, while it is not entirely clear that the Court may consider the email, *but see, Isquith for & on Behalf of Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n. 3 (5th Cir. 1988), because consideration of the email does not change the outcome, and because Razien is the party raising the issue, the Court addresses the argument.

demonstrates, any actions by Micro Focus. Thus, even using Razien's best case argument, his equitable tolling argument fails.

Razien makes a final, last ditch alternative argument to his equitable tolling argument. He claims that his EEOC charge is not untimely as it relates back to a letter he sent to Micro Focus on March 26, 2016, informing it he was going to file an EEOC charge. He relies on caselaw that he says stands for the proposition that an untimely EEOC charge may relate back to an earlier document that is not itself an EEOC charge. *Henderson v. Wal Mart Stores Tex. LLC*, 2010 WL 1525551 (S.D. Tex. 2010). However, that case held that the plaintiff's earlier correspondence with the EEOC did not qualify as a charge, and thus the later charge did not relate back and did not toll the statute of limitations. In this case, Razien relies on e-mail correspondence he sent to his ***former employer***, stating that he was planning on filing an EEOC charge. Dkt. No. 14-2. The letter was not sent to the EEOC. Razien's letter to his former employer is insufficient to implicate any relation back doctrine, as that doctrine only applies to contact with the charging agency.

In short, Razien has failed to establish that he filed a timely complaint against Micro Focus with the EEOC, or that he should receive the benefit of equitable tolling for missing his deadline. His ADA claims against Micro Focus are therefore time barred.

## C.  Claims Against Hewlett Packard

### 1.  Was Hewlett Packard Razien's "Employer"?

To be liable under the ADA, a defendant must have been the plaintiff's employer. *Bloom v. Bexar Cnty., Tex.*, 130 F.3d 722, 724 (5th Cir. 1997) ("Bexar County is not a 'covered entity' with regard to Bloom because Bexar County was not Bloom's employer."). In *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015), the Fifth Circuit adopted the "hybrid economic realities/common law control test" to determine the existence of an employment relationship for

8

purposes of the ADA. *Id.* at 227. "The right to control an employee's conduct is the most important component of this test." *Id.* (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 119 (5th Cir. 1993)). In examining the "control" component, the court considers "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id.* The economic realities component "focuse[s] on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.*

In this case, Razien asserts that Hewlett Packard "consented" to the actions of Micro Focus "either expressly, implicitly, or by acquiescence" and "was in direct collaboration in conjunction with Micro Focus regarding the merger or acquisition of Micro Focus and related terminations and layoffs by Micro Focus." Dkt. No. 12 at 6. Razien fails to plead that Hewlett Packard had the right to hire or fire him, the right to supervise him, the right to set his work schedule, pay his salary, withhold taxes, provide benefits, or any other of the characteristics necessary to establish an employer-employee relationship. The fact that Hewlett Packard was considering the acquisition of Micro Focus, and Micro Focus might have terminated employees to make itself a more desirable target to Hewlett Packard is insufficient to establish that Hewlett Packard was Razien's "employer" for purposes of this litigation. The merger/acquisition occurred after Razien's termination, and thus Hewlett Packard does not qualify as a "covered entity" under the statute.

### 2. Failure to Name Hewlett Packard in the EEOC Charge

Additionally, Hewlett Packard moves to dismiss on the basis that Razien failed to name Hewlett Packard in his discrimination charge filed with the EEOC and therefore failed to exhaust his administrative remedies. Plaintiffs proceeding under the ADA must comply with the same procedural requirements articulated in Title VII, and this includes the duty to exhaust administrative

9

remedies. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5. "[A] party not named in an EEOC charge may not be sued under Title VII unless there is a clear identity of interest between it and the party named in the charge or it has unfairly prevented the filing of an EEOC charge." *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988); *see also McCain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) ("Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."). The filing of an additional charge to name another party is unnecessary where the additional party has been provided with adequate notice of the charge and been given the opportunity to participate in conciliation proceedings. *Burwell v. Truman Med. Ctr., Inc.*, 721 F.Supp. 230, 233-34 (W.D. Mo. 1989)). In this case, Razien only named Micro Focus in his initial charge. Razien failed to plead that he notified Hewlett Packard of the charge, or that it was given a chance to respond and participate in conciliation. Additionally, Razien fails to plead that Micro Focus and Hewlett Packard are joint employers or share an identity, as he asserts that Hewlett Packard played a separate and independent role in his termination. The failure to name Hewlett Packard in the claim is another reason why the claims against it should be dismissed.

**D. State Law Claims**

Razien also brings various state law causes of action based on the Court's supplemental jurisdiction. A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). The Court recommends that Razien's state law claims be dismissed without prejudice.

## III. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** Defendant Micro Focus (US), Inc.'s Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. No. 13) and **GRANT** Defendant Hewlett Packard Enterprise Company's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support (Dkt. No. 16), that it dismiss all federal law claims for failure to state a claim,[3] and that if dismiss all state law claims without prejudice. **IT IS FURTHER ORDERED** that this case be **REMOVED** from the undersigned's docket.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466,

---

[3]The general rule is that a court should not dismiss a claim pursuant to Rule 12(b)(6) without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir.2000) (other citations omitted). The Court need not grant leave to amend here, as Razien has already amended his Complaint twice, the second of which was explicitly filed as an attempt to address Micro Focus's motion to dismiss. Dkt. No. 10 at 1. Further, the limitations issue that defeats Razien's suit is not curable by an amendment.

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 25th day of April, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE